**Ford B. FORD, Under Secretary of the United States Department of Labor, Plaintiff,**

v.

**John C. BIERWIRTH, Robert G. Freese and Carl A. Paladino, Defendants.**

**Joseph W. Ullman, Lillian E. Bladissard, Rita W. Hafner, Anthony Pancella, Jr., Kathleen T. Chew and Benjamin L. Crews, Intervenors.**

**Robert J. LAWRENCE, Plaintiff,**

v.

**GRUMMAN CORPORATION PENSION PLAN, et al., Defendants.**

**Nos. CV 81–3408, CV 81–3530.**

United States District Court, E.D. New York.

Jan. 17, 1986.

Jane Kheel, Thomas L. Holzman, U.S. Dept. of Labor, Office of the Solicitor, Plan Benefits Sec. Div., Washington, D.C., for plaintiff Ford.

Cahill Gordon & Reindel, New York City, for defendants Bierwirth, Freese and Paladino; Raymond L. Falls, Jr., David R. Hyde, P. Kevin Castel, Stanley K. Shapiro, of counsel.

Rains & Pogrebin, P.C., Mineola, N.Y., for intervenors.

Reuss, Ruchala & Handler, Hempstead, N.Y., for plaintiff Lawrence.

*Memorandum of Decision and Order*

MISHLER, District Judge.

The Second Circuit Court of Appeals, in remanding the case to determine what the Grumman Corporation Pension Plan ("Plan") would have earned had the monies that were used to purchase the Grumman stock been invested with other plan assets, held:

> In view of the intent expressed by Congress in providing for the recovery of "losses," ... we hold that the measure of loss applicable under ERISA section 409 requires a comparison of what the Plan actually earned on the Grumman investment with what the Plan would have earned had the funds been available for other Plan purposes. If the latter amount is greater than the former, the loss is the difference between the two; if the former is greater, no loss was sustained.
> In determining what the Plan would have earned had the funds been available for other Plan purposes, the district court should presume that the funds would have been treated like other funds being invested during the same period in proper transactions. Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these. The burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach

of their duty. Any doubt or ambiguity should be resolved against them.

754 F.2d 1049, 1056 (2d Cir.1985).

This court previously found:

> The investment of $44,397,720 for the purchase of the stock brought the Plan a profit of $11.41 per share, a total of $13,-212,780 ($11.41 × 1,158,000 shares); and
> The alternative investment programs in the Plan's portfolio would have earned the following amounts per share had the funds been invested from the time of purchase of the Grumman stock to the date of sale, i.e., March 10, 1983:

| | | |
|---|---|---|
| (a) | All Plan | $13.74 |
| (b) | Stock & Cash Plan | 12.98 |
| (c) | Stock Plan | 15.43 |

The Secretary points to Bierwirth's deposition testimony given on October 22, 1981, soon after the Fund embarked on its program of purchasing Grumman stock, in which he stated that there was "a general determination" that the $140 million of liquid assets invested mainly in U.S. Treasury notes should be invested in stock. The trustees argue that William B. Parmentier, the investment manager of the Fund and assistant treasurer of Grumman, testified at the trial that had the trustees not used the 44 million dollars to purchase the Grumman stock, that money would have remained invested in the short term cash equivalents from which it was taken. The Secretary counters with Parmentier's testimony given on February 4, 1982 and August 3, 1982 in which he stated that prior to September, 1981, the Fund was engaged in a program of converting a portion of the cash to stock and "equities securities." We recognize that the Bierwirth and Parmentier testimony was given to support the trustees' position that the purchase of Grummann stock was not a breach of the duty to the Fund as defined in sections 404(a) and 406(b) of ERISA, 29 U.S.C. §§ 1104(a) and 1106(b). Nevertheless, assuming that the Fund intended to invest its cash and investment equivalents in stock, that program was not carried out. At the trial conducted in December, 1983, Parmentier testified that during the period Septem-

ber 1, 1981 to March 31, 1983, the net increase in investment equities (such as common stock) was $41.9 million, while the total assets in cash and equivalent securities were $146.5 million in September, 1981 and $189.9 million in March, 1983. (The cash and equivalent securities during the period October 1, 1981 to February 28, 1983 were in the range of $100 million to $123+ million).[1] See Exh. P. Joint App. p. 617.

In order to determine what the Plan would have earned had the monies used to purchase the Grumman stock been used to purchase other Plan assets, we use the period prior to the purchase and prior to the sale, i.e., October 1, 1981 and February 28, 1983. We assume that the Fund's $100+ million in cash and equivalents gave it the discretion to purchase larger quantities of equity investments and that the use of the $44+ million was not a significant factor standing in the way. For the calculation we make we therefore assume that the Fund had the sum of $146+ million in cash and equivalent securities during the period from October 1, 1981 to February 28, 1983. The increase in equity investments over the period was approximately 16.5%. We therefore conclude that had the money used to purchase the Grumman stock been otherwise available for investment the trustees would have apportioned it accordingly, i.e., 16.5% in its stock portfolio and 83.5% in its "cash and equivalents" portfolio. The trustees should thus be charged with earnings at the following rate: The 16.5% would have purchased 191,070 shares (16.5% × 1,158,000) which, at a return of $15.43 per share, results in earnings of $2,948,210. The 191,070 shares purchased at $39.62 per share (the highest rate) account for $7,570,193. We find the balance of the funds held in "cash and equivalents" ($36,827,527) would have earned 15.6% for the period from October 12, 1981 to March 10, 1983 (the date of sale of the stock) or $5,745,094. Had the monies not been invested in Grumman stock but rather in stock and "cash and equiva-

lent securities" in the proportion which such would have been held during the period these monies would have earned:

| $ 7,570,193 | (cash invested in stock plan) | $2,948,210 |
| $36,827,527 | (retained in cash and | $5,745,094 |
| $44,397,720 | equivalents) TOTAL | $8,693,304 |

I find that the trustees proved by a preponderance of the evidence that had the monies used to purchase the Grumman stock been invested in the investment programs in which the Plan used for its purchase of stock from its cash and equivalent securities during the period, it would have earned $4,519,476 less than was actually earned through the purchase of the Grumman stock.

The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff in the case of *Ford, etc. v. Bierwirth, et al.*, 636 F.Supp. 540 (D.C.1986) dismissing the complaint and in favor of the defendants and against the plaintiff in the case of *Lawrence v. Grumman Corporation Pension Plan, et al.* (CV 81–3530).

SO ORDERED.

---

**1.** These figures remove the Grumman stock purchases from both the "investment in equities" column and the cash and equivalent securities column. The Grumman stock purchases were made on October 12 and October 13, 1981. Prior to these purchases the Plan had 525,000 shares of Grumman stock as part of its "investment in equities" portfolio.